UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 03-116S |
| | : | |
| LEO BERGERON | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether the Defendant is in violation of the terms of his supervised release and, if so, to recommend a disposition of this matter. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, a revocation hearing was held on February 7, 2011. The Government presented two witnesses at the revocation hearing. A Johnston Police Patrol Officer and Defendant's Probation Officer testified. Defendant, through counsel, cross examined each of the Government's witnesses. Defendant presented one witness, his former girlfriend, at the hearing who was cross-examined by the Government. At the conclusion of the hearing, I ordered Defendant released pending my final Report and Recommendation.

**Background**

On June 29, 2010, the Probation Office petitioned the Court for the issuance of a summons for the Defendant's appearance to answer supervised release violation charges. On June 30, 2010, the District Court ordered the issuance of a summons as requested in the petition. Defendant appeared in Court on July 7, 2010 for an initial appearance and was released pending a final supervised release revocation hearing. The matter was continued on several occasions to allow an underlying state criminal case to run its course. That criminal trial took place in Superior Court in January 2011 and, as discussed

below, Defendant was acquitted by a jury of all charges. A revocation hearing was ultimately held in this case on February 7, 2011, and Defendant contested the following two charges:

> **While on supervision, the defendant shall not commit another federal, state, or local crime.**
>
> On June 5, 2010, while in Johnston, Rhode Island, Leo Bergeron committed the offense of Count 1: Simple Assault/3rd Domestic, Count 2: Vandalism/3rd Domestic, Count 3: Disorderly Conduct, Count 4: Relinquish Telephone and Count 5: Larceny Under $500.
>
> **The defendant shall refrain from any unlawful use of a controlled substance.**
>
> The defendant provided urine screens which tested positive for marihuana on December 23, 2009 and May 14, 2010. The defendant provided urine screens on February 24, 2010 and June 7, 2010 which tested positive for cocaine.

**Discussion**

Pursuant to 18 U.S.C. § 3583(e)(3), the Government bears the burden of proving that Defendant violated his supervised release conditions by a preponderance of the evidence. See United States v. Portalla, 985 F.2d 621, 622 (1st Cir. 1993). Hearsay evidence can be admissible in a supervised release revocation hearing. See Fed. R. Evid. 1101(d)(3); United States v. Portalla, 985 F.2d at 622 (holding that the "tests of admissibility set forth in the Federal Rules of Evidence" are not applicable in revocation hearings but that evidence that does not satisfy those rules "must nonetheless be reliable"); see also United States v. Lowenstein, 108 F.3d 80, 83 (6th Cir. 1997) (supervised release violation finding may rest upon reliable hearsay). Rule 32.1(b)(1)(B)(iii), Fed. R. Crim. P., provides a defendant with the opportunity to question an adverse witness "unless the judge determines that the interest of justice does not require the witness to appear." In United States v. Rondeau, 430 F.3d 44, 47-48 (1st Cir. 2005), the First Circuit held that a supervised release revocation hearing is not a "criminal prosecution" triggering a confrontation right. However, it concluded that a defendant in such a case has a "limited confrontation

right" under Fed. R. Crim. P. 32.1 which requires the court to balance the defendant's "right to confront witnesses with the government's good cause for denying confrontation." Id. at 48. In applying this balancing test, the court "should consider the reliability of the hearsay testimony and the government's reason for declining to produce the declarant." Id.

As an initial matter, the Government met its burden of establishing that Defendant violated the condition that he refrain from any unlawful use of a controlled substance. Defendant's Probation Officer testified that Defendant tested positive for drug use on four occasions (twice for marijuana use and twice for cocaine use). The Probation Officer also testified that she spoke with Defendant regarding these test results and that he admitted drug use to her on those four occasions. Defendant offered no evidence on this issue and thus the Probation Officer's testimony is unrebutted. Since I find the Probation Officer's unrebutted testimony to be credible, I find that the Government has proven the drug use violation which is a Grade C violation under applicable law.

Defendant is also charged with engaging in criminal conduct constituting a Grade A violation under applicable law. This violation arises out of a June 5, 2010 argument between Defendant and his former girlfriend, Amy Lee Lariviere, which resulted in Defendant's arrest by the Johnston Police Department. Defendant was initially charged with five crimes – simple assault/3rd domestic[1], vandalism/3rd domestic, disorderly conduct, refusal to relinquish phone and larceny under $500.00. State v. Bergeron, 32-2010-04424 (3rd Div. R.I. Dist. Ct.). Three of the five charges (simple assault/3rd domestic, vandalism/domestic and disorderly conduct/domestic) were pursued further and were the subject of a jury trial in Rhode Island Superior Court. State v. Bergeron, P2-2010-2905A (R.I. Super.

---

[1] Defendant has three prior domestic assault convictions – one for simple assault (State v. Bergeron, P2-01-1376A) and two for violating a domestic no-contact order (State v. Bergeron, 61-01-06373 and P2-03-1508A). Defendant also had another domestic assault charge (State v. Bergeron, P2-02-3438A) which resulted in a violation of suspended sentence in P2-01-1376A but was dismissed under Rule 48A in July 2003.

Ct.). The vandalism charge was dismissed by the Court, and the jury rendered not guilty verdicts on January 14, 2011 on the simple assault and disorderly conduct charges. Id.

In this case, the Government presented the testimony of Officer Jeffrey Cicchitelli of the Johnston Police. Officer Cicchitelli responded to the Saturday, June 5, 2010 incident involving Defendant and Ms. Lariviere and testified that he was the fourth or fifth officer on scene. (Transcript of 2/7/11 Hearing ("TRI") at p. 8). He arrived on scene at 7:45 p.m. and spoke to Ms. Lariviere. Id. at pp. 8-9. Defendant had left the scene prior to his arrival. Id. at p. 16. Thus, Officer Cicchitelli did not personally observe any of the behaviors that resulted in the charges against Defendant. He was, however, able to personally observe Ms. Lariviere's demeanor, which he described as "shaken but fairly calm," and her physical appearance, which he described as not showing any outward signs of physical injury such as scratches or red marks. Id. at pp. 9, 25-27. Officer Cicchitelli also obtained a written witness statement from Ms. Lariviere. (Gov't Ex. 1).

Although Officer Cicchitelli's testimony was credible, he testified almost entirely as to what was reported to him by Ms. Lariviere. However, Ms. Lariviere subsequently recanted her allegations against Defendant, and she testified as a witness for Defendant. Thus, the case boils down to whether Ms. Lariviere was lying when she was initially interviewed by the police or when she subsequently recanted including her sworn testimony before this Court.

It is undisputed that Defendant and Ms. Lariviere were childhood friends and were involved in a short-term romantic relationship at the time of the June 5, 2010 incident. Defendant had been living with Ms. Lariviere for a couple of months but moved out as a result of the incident. According to Ms. Lariviere, while she still cares about Defendant, their romantic relationship is over, and she has no interest in getting back into such a relationship with him. (Transcript of 2/17/11 ("TRII") at pp. 37-38).

The Government argues that Ms. Lariviere's current version of what happened is not credible and has been fabricated in an effort to protect her childhood friend and former boyfriend from incarceration. The Government argues that Ms. Lariviere's statements on the night of her dispute with Defendant are the truth and show that Defendant violated the law.

Ms. Lariviere testified that she misrepresented and exaggerated Defendant's conduct to the police to get him arrested because she was upset with him and believed at the time (incorrectly so) that Defendant had stolen $180.00 from her purse. She also testified that "the whole reason I wrote the statement was because I wanted Leo to get in trouble and get caught so that I could get my money back before he spent it." (TRII at p. 30). Thus, Defendant argues that Ms. Lariviere's recanted, current version of events is truthful and shows that Defendant did not violate the law.

As an initial matter, the Government failed to prove that Defendant committed the three offenses which were not submitted to a Superior Court jury, i.e., vandalism (R.I. Gen. Laws § 11-44-1); refusal to relinquish telephone (R.I. Gen. Laws § 11-35-14); and larceny under $500.00. (R.I. Gen. Laws §§ 11-44-1, 11-41-5(a)). See also R.I. Gen. Laws § 12-29-2. As to vandalism, Defendant was charged with breaking a glass-top end table and a lamp. However, Officer Cicchitelli testified that Ms. Lariviere never told him that the table and lamp were her property. (TRI at p. 23). Ms. Lariviere testified that Defendant was living with her at the time, the table was Defendant's property and that she found out later that he accidentally broke it while packing to move out. (TRII at pp. 14, 27-28). Ms. Lariviere also testified that she was upset when she saw the broken table and threw a picture frame with a picture of her and Defendant in it which hit and broke her lamp. Id. at p. 28. Further, while Ms. Lariviere's written witness statement of June 5, 2010 mentions the presence of "broken glass," it contains no specifics as to what was broken or who owned it. (Gov't Ex. 1). Finally, the Government offered no pictures or other evidence regarding the condition or ownership of the table or lamp. Thus, the Government has not

offered sufficient evidence to establish that Defendant committed domestic vandalism, i.e., destroying "the property of another," in violation of R.I. Gen. Laws §§ 11-44-1/12-29-2.

As to the larceny charge, Officer Cicchitelli testified that Ms. Lariviere told him on June 5, 2010 that she believed Defendant had stolen "approximately $180.00 in loose cash from [her] purse." (TRI at p. 16). Defendant was initially charged with misdemeanor larceny (Def.'s Ex. B at p. 2) but that charge was not pursued in Superior Court. Ms. Lariviere testified that she checked her purse after Defendant had left the scene on June 5, 2010 and believed he had taken $180.00 from her. (TRII at p. 26). She also testified, as confirmed by Officer Cicchitelli, that she reported the suspected theft to the police on that night. Id. Ms. Lariviere testified that she called and spoke with Defendant at the request of the police on the night of June 5, 2010, and that Defendant "was very insistent that he didn't touch [her] money."[2] Id. at pp. 28-29. Ms. Lariviere also testified that she subsequently found the money in a jar in her house and then recalled that she had put it there for safekeeping when she got home from work earlier on June 5, 2010. Id. at p. 30. Again, the Government has not offered sufficient evidence to establish that Defendant committed larceny in violation of R.I. Gen. Laws § 11-41-1.

As to the telephone charge, the evidence is also inconclusive and in conflict. Officer Cicchitelli testified that Ms. Lariviere told him that Defendant "grabbed the cell phone from her hand and removed the battery rendering [it] inoperable." (TRI at p. 15). In her written statement, Ms. Lariviere wrote on June 5, 2010 that Defendant "grabbed" her cell phone out of her hand but mentioned nothing about the removal of the battery. (Gov't Ex. 1). However, Ms. Lariviere testified under oath at the revocation hearing that Defendant did not grab the phone from her but that she dropped it at the end of her driveway. (TRII at p. 49). The Government offered no other testimony or other evidence regarding the phone.

---

[2] Defendant's Probation Officer testified that she met with Defendant on Monday, June 7, 2010, and that he denied taking any money from Ms. Lariviere. (TRI at pp. 41, 47). She also testified that she met with Ms. Lariviere on or about June 7, 2010, and Ms. Lariviere advised her that she had found the allegedly stolen money. Id. at pp. 49-50.

Also, since Officer Cicchitelli did not recover the phone on the scene, he was unable to offer any testimony or other evidence as to the condition or location of the phone and/or battery at that time. The Government has not offered sufficient evidence to establish that Defendant obstructed Ms. Lariviere's use of her cell phone for an "emergency call" in violation of R.I. Gen. Laws §§ 11-35-14/12-29-2.

That brings me to the two charges (domestic simple assault and domestic disorderly conduct) which were tried in Superior Court and resulted in not guilty jury verdicts. These charges primarily relate to the interactions between Defendant and Ms. Lariviere inside Ms. Lariviere's parked SUV and thereafter. On the afternoon of June 5, 2010, Defendant and Ms. Lariviere had a disagreement that resulted in Defendant packing his belongings to move out of Ms. Lariviere's home and Ms. Lariviere shutting off her cell phone and driving to a park to sit for "almost two hours." According to Ms. Lariviere, she later returned home and found the broken glass table and Defendant's packed belongings. She indicated that she texted him and told him that she thought it was better if he did not come back. (TRII at p. 14). Ms. Lariviere testified that, despite her text, Defendant returned shortly thereafter with a friend[3] and the friend's young son. Id. at pp. 15-16. Ms. Lariviere testified that this "pissed [her] off," and she took her keys and purse and went out to her car to leave. Id. at p. 17.

While Ms. Lariviere was sitting in her SUV, she testified that Defendant opened the vehicle's door and sat in the passenger's seat. Id. at p. 18. Ms. Lariviere testified that she "starting yelling what was bothering" her at Defendant and described her demeanor as "tired[4], aggravated [and] stressed out."

---

[3] The friend, Christopher Borelli, is also on supervised release from a conviction in this Court (United States v. Borelli, CR No. 05-062S). While Defendant's standard conditions of supervision prevent him from associating with convicted felons unless granted permission to do so by his Probation Officer, there is no violation charged for this association and no indication whether or not Defendant had such permission.

[4] Ms. Lariviere testified that she had worked as a cleaner the prior night in Connecticut starting at 2:00 a.m. and arrived home from work mid-day to early afternoon on June 5, 2010. (TRII at p. 7).

Id. Ms. Lariviere testified that Defendant was "trying to figure out why [she] was so upset," "trying to calm [her] down" and trying to get her to "come in the house." Id. at p. 19.

At some point, according to Ms. Lariviere, Defendant reached for her car keys, and she pushed him away. Id. She also testified that Defendant then put his arms around her to calm her down. Id. at pp. 19-20. She described it as "like, you know, if someone's giving you a hug and you're not hugging back." Id. at p. 64. Ms. Lariviere testified that she was very upset and pulled her head down to get away and pushed Defendant which resulted in her hitting her eye on the middle console of her SUV. Id. at p. 21. She testified that she then "freaked out," "jumped out of the car" and ran away towards the road. Id. When I asked her why she ran away if she was the aggressor and Defendant was trying to calm her down as she claimed, Ms. Lariviere stated that "I definitely was the one – I mean, if you ever seen me upset, when it comes to a man, if I get upset, I don't – I just – it's like leave me alone, leave me alone, leave me alone." Id. at p. 65. Apparently, a concerned passer-by called 911 from the road, and police were dispatched to the scene.

As I previously stated, the issue before the Court is whether Ms. Lariviere was lying when she told the police that Defendant put her in a "choke hold" and "twisted [her] arm" (Gov't Ex. 1) or when she later recanted and denied that Defendant assaulted her.[5] (TRII at pp. 44, 47). Frankly, both sides present an equally plausible argument – the Government contending that Ms. Lariviere is lying now to protect a childhood friend and former lover from jail time; and Defendant contending that Ms. Lariviere lied on June 5, 2010 about his behavior because she was upset with him and wrongly believed that he

---

[5] Defendant's Probation Officer testified that Defendant came into her office on June 7, 2010 and "admitted that he had held [Ms. Lariviere] in the vehicle and restrained her." (TRI at p. 41). She also testified that Defendant described Ms. Lariviere "as being really distraught" and that he told her that "he was trying to calm [Ms. Lariviere] down." Id. at pp. 44-45. Finally, she testified that Defendant demonstrated his actions as a "bear hug or hold." Id. While I find the Probation Officer's testimony credible on this point, the description attributed to Defendant does not by itself establish a "choke hold" or other assault and does not directly contradict Ms. Lariviere's recanted version of events.

had stolen her pay. Also, the Government failed to offer any additional evidence, such as the testimony of a neighbor, passer-by, Mr. Borelli, etc., which might shed additional light as to what happened that night. Thus, the Government has not tilted the balance of evidence in its favor to prove the violation by a preponderance of the evidence.

Ms. Lariviere testified that she exaggerated her allegations because she "was interested in getting [Defendant] arrested because [she] knew he took off at that time, so [she] knew [she] wanted to get him arrested to get [her] money back before he spent it." (TRII at pp. 47-48). Ms. Lariviere's story is also bolstered by the fact that she left two voice mails for Defendant's Probation Officer over the weekend of June 5-6, 2010 which corroborates her claimed urgency in getting Defendant arrested in order to get her money back. Finally, while testifying under oath before this Court, Ms. Lariviere appeared credible to the Court and sincerely remorseful about her actions. She was confident and consistent in her testimony and did not exhibit any signs, such as nervousness or confusion, to indicate that she was being untruthful to the Court. While I, of course, consider domestic violence to be abhorrent and the descriptions contained in the June 18, 2004 pre-sentence investigation report of Defendant's prior domestic violence crimes from 2001 and 2002 to be sickening, it is not appropriate to punish Defendant in this case for that past behavior. The bottom line is that there was a paucity of direct evidence available in this case, and the alleged victim recanted and offered a credible explanation for changing her story. Thus, I conclude that the Government has not offered sufficient evidence to establish that Defendant committed domestic simple assault in violation of R.I. Gen. Laws §§ 11-5-3/12-29-2 or domestic disorderly conduct in violation of R.I. Gen. Laws §§ 11-45-1/12-29-2.

**Conclusion**

For the foregoing reasons, I find that the Government has met its burden of proving the Grade C drug use charge against Defendant but has not met its burden of proving the Grade A charge against

Defendant by a preponderance of the evidence and recommend that the District Court dismiss, with prejudice, the Grade A charge and find Defendant in violation as to the Grade C charge. As to the Grade C violation, I will recommend a sentence to the District Court after holding a sentencing hearing.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. Fed. R. Crim. P. 59; LR Cr 57.2. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's Decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 15, 2011